**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Billy G. SAMPLES, Defendant-Appellant.**

No. 82–1749.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 5, 1983.

Decided July 22, 1983.

Richard T. Sikes, Chicago, Ill., for defendant-appellant.

Geraldine Fehst, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before ESCHBACH and COFFEY, Circuit Judges, and NEAHER, Senior District Judge.*

ESCHBACH, Circuit Judge.

After a jury trial, the defendant was convicted of aiding and abetting the receipt, sale, and disposition of stolen beef in violation of 18 U.S.C. §§ 2, 2315, and aiding and abetting the receipt and disposition of a stolen motor vehicle in violation of 18 U.S.C. §§ 2, 2313. On appeal the defendant argues that the indictment should have been dismissed as untimely, the district

* The Honorable Edward R. Neaher, Senior District Judge for the Eastern District of New York, sitting by designation.

court erred in matters relating to the admissibility and use of evidence, and the prosecutor's remarks in closing argument warranted a mistrial. Finding all of these contentions to be meritless, we affirm.

## I. HISTORY OF THE PROSECUTION

In February of 1980, the defendant was named in four counts of an indictment returned by a grand jury sitting in the Southern District of Iowa. In two counts the defendant was charged with violating 18 U.S.C. § 2315 by receiving, selling, and disposing of stolen beef, and violating 18 U.S.C. § 659 because the beef was a part of an interstate shipment when it was stolen. In the other two counts the defendant was charged with conspiracy, 18 U.S.C. § 371, and the concealment of a felony, 18 U.S.C. § 4. A warrant was issued and on March 3, 1980, the defendant was arrested.

The defendant moved the district court to dismiss the two counts charging receipt of stolen beef because the alleged receipt occurred in the Northern District of Illinois, not the Southern District of Iowa where the indictment was returned. Agreeing that venue in Iowa was improper, the district court dismissed these two counts. The other two counts, conspiracy and the concealment of a felony, were dismissed by the United States attorney with leave of the court, see Fed.R.Crim.P. 48(a).

Twenty months passed before a grand jury sitting in the Northern District of Illinois returned a two-count indictment against the defendant. The defendant was charged with aiding and abetting the receipt, sale, and disposition of stolen beef, 18 U.S.C. §§ 2, 2315, and aiding and abetting the receipt and disposition of a stolen motor vehicle, 18 U.S.C. §§ 2, 2313. After the district court denied the defendant's motion to dismiss the indictment as impermissibly tardy, the case went to trial on March 22, 1982.

The evidence revealed that in order to raise money for a cocaine deal, a man named Shadle stole a tractor-trailer carrying a load of beef in Iowa. Shadle drove the vehicle to Lyons, Illinois, where he met the defendant at a tavern. The defendant assisted Shadle in finding a buyer who paid $4,000 for the meat. Leaving the truckload of beef in Illinois, Shadle returned to his home in Iowa.

Soon after he returned home, Shadle was arrested on an unrelated matter. While in custody, Shadle agreed to cooperate with the FBI concerning the stolen beef episode. Shadle, therefore, called the defendant from a telephone equipped with a recording device and the two discussed the beef deal as well as future deals. The tape recording of this conversation and Shadle's trial testimony were sufficient, in the twelve jurors' minds, to return guilty verdicts on both counts.

## II. SPEEDY TRIAL CLAIMS

The defendant maintains that because he was originally indicted in February of 1980, but did not go to trial till March 22, 1982, he was denied his Sixth Amendment right to a speedy trial. This argument, however, ignores the fact that for twenty months of this period, no charges were pending against the defendant. The Speedy Trial Clause applies only to an accused; when charges were dismissed in Iowa, the defendant lost not only the status of being an accused, he lost the Sixth Amendment's guarantee of a prompt trial. See United States v. MacDonald, 456 U.S. 1, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696 (1982). It is scarcely realistic to suppose that a citizen, free from criminal charges, wants or deserves a speedy trial. Once all counts of the indictment were dismissed, the defendant "was legally and constitutionally in the same posture as though no charges had been made." Id. 102 S.Ct. at 1503. When the defendant was re-indicted in 1982, the trial commenced the next month—a period so brief as to render the defendant's constitutional claim frivolous. See United States v. Gandara, 586 F.2d 1156, 1162 (7th Cir.1978) (delay of 133 days is relatively brief).

This is not to say that the twenty-month period between indictments is free

from constitutional scrutiny. Any undue delay in re-indicting the defendant must be examined under the Due Process Clause. *See United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696 (1982). The defendant, however, does not make a due process argument and it appears that we cannot make a case for him. There was no prejudice in the defendant's ability to make a defense and the prosecutor's delay was not premised on an impermissible motive, such as a desire to gain an unfair tactical advantage. We hold, therefore, that the delay in re-indicting the defendant, although lengthy, was within constitutional bounds. *See United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).

█ Apart from constitutional bounds, the defendant argues that the second indictment was returned outside of the time limitation prescribed in the Speedy Trial Act, Pub.L. No. 93–619, 88 Stat. 2076 (1975). Moreover, the defendant contends that the trial commenced after the time period set forth in the Speedy Trial Act had expired. This latter contention, pregnant with complex problems requiring litigation and the exercise of judicial discretion,[1] was not raised in the district court and will thus not be considered on appeal. *See United States v. White,* 607 F.2d 203, 205 (7th Cir.1979), *cert. denied,* 449 U.S. 1114, 101 S.Ct. 926, 66 L.Ed.2d 843 (1981).

█ The "Speedy Trial Act" is, in part, a misnomer because the statute insures speedy indictments as well as speedy trials. 18 U.S.C. § 3161(b) provides in relevant part that "[a]ny . . . indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested." Relying on this subsection and the fact that he was first arrested on March 3, 1980, the defendant asserts that the indictment returned in the Northern District of Illinois in February of 1982 was untimely.

The draftsmen of the Speedy Trial Act, however, realized that when a defendant is able to secure the dismissal of charges, it may be impossible to re-indict that person within thirty days of the original arrest. *See* S.Rep. No. 1021, 93rd Cong., 2d Sess. (1974). They included in the Speedy Trial Act, therefore, a provision which provides that "[i]f any indictment . . . is dismissed upon motion of the defendant, . . . and thereafter . . . [an] indictment is filed charging such defendant with the same offense or an offense . . . arising from the same criminal episode, the provisions of subsection (b) and (c) of this section shall be applicable with respect to such subsequent . . . indictment." 18 U.S.C. § 3161(d)(1). This provision, subsection (d)(1), applies in the instant case; the indictment returned in the Northern District of Illinois contains charges arising from the same criminal episode that formed the basis of the charges dismissed in Iowa on the defendant's motion.

Concluding that subsection (d)(1) applies does not end our analysis because it is difficult to imagine a more obliquely written provision. Subsection (d)(1), which refers back to subsection (b), essentially states that when a person is re-indicted, the re-indictment must occur within thirty days of the person's arrest. The Speedy Trial Act, however, does not state which arrest triggers the thirty-day limit—the original arrest or an arrest made in connection with the re-indictment. We resolve this ambiguity by examining the legislative history and structure of the Speedy Trial Act.

The Senate Report states that subsection (d)(1) "allows the time limits imposed in subsections 3161(b) and (c) to begin to run afresh should an indictment . . . be dismissed upon defendant's motion." S.Rep. No. 1021, 93d Cong., 2d Sess. (1974); *see* Frase, *The Speedy Trial Act of 1974,* 43 U.Chi.L.Rev. 667, 696 (1976). If the thirty-day limit is "to begin to run afresh," then it follows that the original arrest, made in

---

1. If a defendant moves to dismiss an indictment for failure to commence the trial on time, the government may argue that certain periods

of time are excludable, 18 U.S.C. § 3161(h), and that dismissal should be without prejudice, 18 U.S.C. § 3162(a)(2).

connection with the original indictment, is not the starting point to measure whether the subsequent indictment is timely. Rather, if an indictment is dismissed and the person is subsequently arrested, the re-indictment must be filed within thirty days of the subsequent arrest. *See United States v. Rabb,* 680 F.2d 294, 297 (3d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 162, 74 L.Ed.2d 135 (1982).

This conclusion is supported by § 3162(a)(1), which allows a district court to dismiss a complaint *without prejudice* if an indictment is not returned on time. *See United States v. Thomas,* 705 F.2d 709, 710–11 (4th Cir.1983). If the timeliness of an indictment was measured by reference to the original arrest in the matter, most (if not all) dismissals would be with de facto prejudice; thirty days will have passed from the time of the original arrest till the time of the indictment.

■ We hold, therefore, that the indictment in the Northern District of Illinois did not have to be returned within thirty days of the defendant's arrest in 1980. Once the 1980 charges were dismissed, the "speedy indictment" clock returned to zero. If the defendant had been subsequently arrested, then the government would have had thirty days to file a new indictment. There was no such arrest in this case—the second prosecution began with an indictment—and thus the re-indictment was timely.

## III.   EVIDENTIARY MATTERS

■ The defendant perfunctorily contends that certain testimony of Shadle, the man who stole the truckload of beef, should have been excluded as hearsay. Shadle testified that he was given the defendant's name and phone number in a telephone conversation with a man named Terry Weber. Finding that the existence of a conspiracy had been shown by a preponderance of the evidence, *see United States v. Santiago,* 582 F.2d 1128 (7th Cir.1978), the district judge ruled that the testimony satisfied the co-conspirator's exception to the hearsay rule, *see* Fed.R.Evid. 801(d)(2)(E). The district judge's finding and ruling were justi-

fied and will not be disturbed. *See generally United States v. Gil,* 604 F.2d 546 (7th Cir.1979) (a conspiracy need not be charged for the co-conspirator's exception to apply).

■ We also find no error in the district judge's decision allowing the tape recording of Shadle's conversation with the defendant to go to the jury room. This recording was admitted into evidence and, as a general rule, the district court is vested with the discretion to decide whether to send exhibits to the jury room. *See United States v. Gross,* 451 F.2d 1355, 1359 (7th Cir.1971). We perceive no reason why tape recordings should be exempt from this general rule. *See Hamilton v. United States,* 433 F.2d 526, 530 (D.C.Cir.1970), *cert. denied,* 402 U.S. 944, 91 S.Ct. 1612, 29 L.Ed.2d 112 (1971); *see generally United States v. Dorn,* 561 F.2d 1252, 1257 (7th Cir.1977).

■ Contrary to the defendant's contention, the district judge did not selectively send only prejudicial evidence to the jury room. All exhibits, the government's and the defendant's, were given to the jury. To be sure the district judge did not give a transcript of the defendant's testimony to the jury, but she also did not give the jury a transcript of Shadle's inculpatory testimony. The district judge, therefore, acted even-handedly and within her discretion.

## IV.   CLOSING ARGUMENT

To appreciate the prosecutor's remarks in rebuttal closing argument, one must be familiar with the defendant's defense. The tape recording of Shadle's phone conversation with the defendant reveals that the defendant, prior to his arrest, had knowledge of the stolen beef episode. At the trial the defendant testified that he garnered this knowledge, not from participation in the criminal events, but from Shadle's prior unsolicited remarks about the stolen truckload of beef.

In his rebuttal closing argument the prosecutor told the jury that the defendant three times "passed up the opportunity to tell his story." The three times that the prosecutor referred to were: (1) when the

defendant's attorney could have made an opening statement to the jury, (2) when the FBI arrested the defendant on March 3, 1980, and (3) when a police officer from Lyons, Illinois, talked with the defendant shortly after the criminal episode. Giving careful consideration to the reference to these three "passed opportunities," we conclude that the prosecutor's remarks did not warrant a mistrial.

■ The prosecutor's remark concerning the lack of an opening statement from the defense counsel was in response to the defense counsel's statement in closing argument that "I will only have this one opportunity to talk to you." Moreover, after an objection was made to the prosecutor's remark, the district judge told the jury that rarely do defense attorneys make opening statements and that the defendant had no obligation to produce any evidence in this case. If the prosecutor erred in referring to the defense counsel's decision not to make an opening statement, that error was remedied by the district judge's swift and complete statement to the jury.

In referring to the defendant's post-arrest failure to tell the FBI his story (i.e. he knew of the stolen beef but did not aid in its disposition), the prosecutor was fairly commenting on relevant evidence properly admitted at trial. After the defendant testified that Shadle told him of the stolen beef, the prosecutor cross-examined the defendant concerning why the defendant, in an interview with an FBI agent, denied all knowledge of the episode. This cross-examination, which occurred without objection, was followed by the testimony of the FBI agent who confirmed that the defendant did, in fact, deny knowledge of the stolen truckload of beef.

■ Although a prosecutor may not ordinarily inquire into or comment on post-arrest silence, *see Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the inquiry and comment in this case concerned a post-arrest *statement,* not post-arrest silence. At the trial the defendant admitted knowledge of Shadle's criminal activities whereas previously he had denied such

knowledge. The Fifth Amendment does not insulate a defendant, who takes the stand, from inquiry into prior inconsistent statements. *See Anderson v. Charles,* 447 U.S. 404, 408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980). The defendant, by deciding to speak to the FBI agent, risked having his speech used to discredit his trial testimony. *See Grieco v. Hall,* 641 F.2d 1029, 1034 (1st Cir.1981).

■ Furthermore, the Fifth Amendment is not violated by use of pre-arrest silence to impeach a criminal defendant's credibility. *See Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980). The prosecutor was thus free to comment on evidence demonstrating that the defendant failed to reveal his knowledge about the stolen beef when he conversed with the Lyons' police officer. At oral argument the defendant's counsel conceded the validity of this proposition but argued that there was no evidence that the defendant did not tell his story to the police officer. In essence, the defendant is asserting that the prosecutor's comment on pre-arrest silence went beyond the scope of the evidence.

We will not dwell on the question whether the evidence permitted the conclusion that the defendant remained silent in the presence of the Lyons' police officer. At one point in the trial the defendant admitted that he never called the Lyons' police about the stolen beef. It would thus appear that the prosecutor's comment about pre-arrest silence was a fair inference, but we need not reach this conclusion because the comment played an insignificant role in the trial.

■ First, the implication of pre-arrest silence is ambiguous; there are many reasons why a person would not volunteer knowledge of criminal activities. Second, the defendant's testimony was primarily impeached by directing the jurors' attention to the defendant's prior inconsistent statement made to the FBI agent. Third, the evidence of guilt was substantial, if not overwhelming. And finally, the district

judge naturally instructed the jury that comments of the attorneys were not to be considered as evidence. *See United States v. Winograd,* 656 F.2d 279, 284 (7th Cir. 1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982). In light of all these factors, we are convinced beyond a reasonable doubt that even if the prosecutor misspoke, the error was harmless. *See United States v. Hasting,* —— U.S. ——, ——, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983).

## V.

For the reasons expressed in this opinion, the judgment of the district court is affirmed.