**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Wayne Douglas WILSON,
Defendant–Appellant.**

No. 90–1270.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 6, 1991.

Decided May 1, 1992.

As Amended May 6, 1992.

Stan Powell, Asst. U.S. Atty., Steven D. DeBrota (argued), Indianapolis, Ind., for plaintiff-appellee.

Bruce H. Bornstein (argued), Freedman & Bornstein, Chicago, Ill., for defendant-appellant.

Before COFFEY and FLAUM, Circuit Judges, and GRANT, Senior District Judge.[*]

FLAUM, Circuit Judge.

Wayne Wilson ("Wilson") and Danny Ray Trosper ("Trosper" or "Danny Ray") robbed two Indiana banks in August 1988. On the first occasion, Wilson waited in the getaway car while Trosper entered the Elston Bank & Trust of Crawfordsville and took $3,200 at gunpoint. Wilson and Tros-

---

[*] The Honorable Robert A. Grant, Senior District Judge of the United States District Court for the Northern District of Indiana, sitting by designation.

per fled to Lebanon, Indiana, where they checked into a Dollar Inn and split the proceeds. Wilson then left, but before doing so, called Trosper's brother, Hulon Trosper, and asked him to retrieve Danny Ray from the motel. Hulon and his wife, Carla, picked Danny Ray up and took him to a neighboring town, where they checked into another motel and helped him dye his hair another color. Of course, by this time, Danny Ray let Hulon and Carla in on his misdeed.

Just one week later, Wilson and Trosper selected the Mid–States Bank of Lebanon for a repeat performance. This time Trosper waited in the getaway car while Wilson entered the bank and took $6,250 at gunpoint, using the same weapon as Trosper used before, a Rossi Interarms revolver. After the robbery, Wilson went to the home of his stepfather, Richard Basham, and asked if he could stay with him for awhile; Basham agreed, and helped Wilson unload and store his luggage in the garage. Later that day, Wilson's stepbrother, James Basham, a local deputy sheriff, learned that Wilson was wanted by the FBI. James Basham went and found Wilson and convinced him to surrender to the FBI. Wilson signed a consent form permitting the FBI to search his car (which was parked at Richard Basham's home) and Richard Basham signed a consent form permitting the FBI to search his garage. Richard Basham was at work during the search of his garage; however, earlier, when he went to hang the clothes inside Wilson's luggage, he removed a revolver he discovered inside the luggage and turned it over to the FBI on the advice of his son James Basham.

A grand jury returned a five-count indictment, charging Wilson and Trosper with two counts of bank robbery, 18 U.S.C. § 2113(a) and (d), and with two counts of using a firearm in the commission of a violent crime, 18 U.S.C. § 924(c), and charging Hulon Trosper with one count of being an accessory after the fact. 18 U.S.C. § 3. Danny Ray and Hulon Trosper decided to plead guilty and to cooperate with the government, while Wilson chose to have his case tried to a jury. Just before trial, the government successfully sought a superseding indictment against Wilson, adding two additional counts—one for each of the two robberies—for possession of a firearm by a convicted felon. 18 U.S.C. §§ 922(g) and 924(e).

The government's case consisted primarily of the testimony of Danny Ray, Hulon, and Carla Trosper, along with Wilson's girlfriend, Sharon Ritchie, all of whom inculpated Wilson in the robberies. In addition, Richard Basham testified that he found the revolver in Wilson's luggage, and the manager of the Dollar Inn in Lebanon testified that Wilson checked into his motel on the date of the first robbery.

Wilson chose to represent himself at trial, although the court provided him with standby counsel. He elected not to take the stand; his only witness was an inmate from the Marion County Jail who testified that he overheard a conversation between Trosper and Wilson, in which Trosper exculpated Wilson in the bank robberies. Trosper refuted this testimony and a jury found Wilson guilty on all six counts. The district court sentenced Wilson to 600 months in prison. On appeal, Wilson challenges his conviction and sentence. We affirm his conviction, but vacate his sentence and remand for resentencing.

## I.

■ Wilson first argues he was unfairly prejudiced by the district court's decision to grant the government a continuance two weeks before his first scheduled trial date. We review this ruling under the abuse of discretion standard. *United States v. Vega,* 860 F.2d 779, 787 (7th Cir.1988).

After debriefing Trosper on July 12, 1989, the government notified the court on July 14, 1989, that it wished to seek a superseding indictment against Wilson. The government had learned, among other things, that Wilson owned the revolver used in the robberies and that it was in his possession at all relevant times. Trosper also confirmed that Wilson had two prior armed robbery convictions, one in 1975 in Kentucky, and one in 1979 in Indiana, mak-

ing it a federal violation for him to carry a firearm. 18 U.S.C. §§ 922(g) and 924(e). Because the next grand jury was not scheduled to convene until July 25, 1989, the day Wilson's trial was scheduled to begin, the government sought a continuance so that all charges against Wilson could be tried together. The court obliged, rescheduling the trial for August 30, 1989; in the interim, a grand jury added the two new charges against Wilson.

■ Wilson's counsel filed an objection, alleging that the government knew of his prior convictions from the onset of the case and, thus, had no legitimate basis to seek a continuance. Wilson surmises the government sought this continuance in order to gain an unfair tactical advantage on the eve of trial. The continuance gave the government time to bring additional charges against Wilson, which in turn allowed the jury to hear of Wilson's two prior felony convictions, and also permitted the government to seek a substantially increased sentence against him, all of this amounting to an "unfair tactical advantage." Wilson borrows this quoted language from *United States v. Samples*, 713 F.2d 298, 302 (7th Cir.1983), in which we confronted a claim that a delay in seeking a reindictment unfairly prejudiced the defendant. Such claims are examined under the due process clause, *see United States v. MacDonald*, 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982), a claim the defendant in *Samples* failed to properly raise. *Samples*, 713 F.2d at 302. Nonetheless, we noted for the record in *Samples* that, even had the issue been properly raised, the defendant's due process rights were not breached because the delay caused no prejudice to the defendant's ability to raise a defense and because it did not result from an impermissible governmental motive, such as a desire to gain an "unfair tactical advantage." *Id.*

■ Here, Wilson shows neither an impermissible motive nor any prejudice resulting from the continuance. The government sought a continuance because of scheduling difficulties with the grand jury; the continuance avoided the possibility of a superseding indictment being returned on the day Wilson's trial began, and thus avoided the need to conduct two trials arising out of a common set of facts. Faced with scheduling difficulties, the court reasonably granted the continuance to avoid duplicative trials. *See, e.g., United States v. Asubonteng*, 895 F.2d 424, 427 (7th Cir. 1990) (recognizing judicial discretion to grant a continuance to allow combined trial of initial and superseding charges), *cert. denied*, 494 U.S. 1089, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990). We reject Wilson's suggestion that the government learned nothing new from the debriefing. Trosper confirmed Wilson's criminal history and provided certain key details, such as Wilson's ownership and possession of the revolver, that reasonably lead the government to seek additional charges against him. Thus, Wilson fails to show the presence of an illegitimate motive.

Wilson also fails to show any prejudice from the delay. Prior to the July 14 continuance, the court granted continuances to Wilson on four separate occasions, and on August 10, 1989, granted him a fifth, continuing the trial to September 26, 1989. Finally, on September 29, 1989, the court continued the trial on its own to November 6, 1989. Wilson fails to offer *any* evidence that the July 14 continuance—the one that permitted the government to seek a superseding indictment—impaired his ability to mount a defense. *Compare United States v. Rojas*, 607 F.Supp. 1439, 1448 (N.D.Ind.1985) (30–day continuance to allow for superseding indictment, even if error, was harmless; defendant had ample opportunity to prepare a defense), *aff'd*, 783 F.2d 105 (7th Cir.), *cert. denied*, 479 U.S. 856, 107 S.Ct. 195, 93 L.Ed.2d 127 (1986). The "tactical advantage" Wilson attributes to the continuance flows not from the delay it caused, but directly from the additional charges of criminal activity returned in the superseding indictment. Those charges may displease Wilson, but the government is entitled, in good faith, to vigorously pursue all available criminal charges against a defendant. Moreover, Wilson was apparently untroubled by whatever "tactical advantage" the government

allegedly gained from the additional charges: he expressly rejected the advice of standby counsel to seek severance of the new charges from the original ones, which would have prevented the jury hearing the original charges from learning of the prior convictions. We conclude the court properly exercised its discretion in granting the government's requested continuance.

## II.

Wilson next argues the district court committed reversible error by failing to rule on his motion to suppress evidence. Before trial, Wilson apparently thought that his post-arrest admissions to the FBI (which were never introduced at trial) were tainted by his warrantless arrest, and that the revolver was tainted by an unlawful search of his stepfather's garage.

Wilson first raised this issue in a motion filed on October 11, 1988. The court scheduled a hearing for November 1, 1988, but before that date arrived, Wilson retained new counsel and the hearing had to be canceled. Wilson dropped the matter until shortly after his arraignment on the superseding indictment, when his standby counsel informed the court that Wilson wished to raise some suppression issues. Counsel informed the court that, in his view, Wilson had no factual basis for the motion but, notwithstanding these reservations, the court allowed Wilson to present his motion orally. Wilson argued, among other things, that he was arrested without a warrant and that his stepfather did not voluntarily consent to a search of his garage and assented only after FBI threats to put him in jail as an accomplice. The government responded that it did not need a warrant because it had probable cause and that Wilson had no standing to object to the search of his stepfather's garage. After listening to these arguments, the court announced it would first conduct *voir dire*—apparently, the jury venire was present during this whole exchange—and then hold an evidentiary hearing outside the presence of the jury to flesh out this standing issue. That hearing never took place.

Wilson argues the court committed reversible error by failing to rule on this motion or to conduct an evidentiary hearing. *See Battle v. United States*, 345 F.2d 438 (D.C.Cir.1965) (failure to rule on motion to suppress constituted reversible error). The Federal Rules of Criminal Procedure expressly require courts to conduct suppression hearings, if deemed necessary, prior to trial, Fed.R.Crim.P. 12(b)(3), and had one occurred here, Wilson argues, it might have revealed that his stepfather and stepbrother were acting at the direction of the FBI in carrying out a warrantless search of the garage.

We conclude that Wilson in effect waived this issue at trial by failing to call to the court's attention the lack of a ruling on his suppression motion and by failing to object when the government moved to introduce the revolver into evidence. In *United States v. Taglia*, 922 F.2d 413, 416–17 (7th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 2040, 114 L.Ed.2d 125 (1991), we held that, absent a claim of ineffective assistance of counsel, a defendant's failure to remind the court to rule on a pretrial motion for severance constituted waiver. "If a motion is not acted upon a litigant had better renew it. He may not lull the judge into thinking that it has been abandoned and then, after he has lost, pull a rabbit out of his pocket in the form of a forgotten motion." *Id.* Although we deal here with a motion to suppress, rather than a motion to sever, our holding in *Taglia* is equally applicable in both contexts. Wilson failed to renew his motion after the court conducted *voir dire.* Later, when the government moved to admit the revolver into evidence, Wilson remained silent while his standby counsel affirmatively stated that Wilson had no objection to admitting the revolver. Wilson has not claimed he received ineffective assistance of (standby) counsel and his failure to object waived any potential defects in the admission of the revolver.

We will not consider a waived issue on appeal unless it is clear from the record that plain error was committed.

*See United States v. Percival,* 756 F.2d 600, 611 (7th Cir.1985). Wilson contends a full evidentiary hearing might have shown that his stepfather or stepbrother were in league with the government in conducting the searches. This contention amounts to bald speculation; not only is the record void of any evidence to support this theory, but the testimony adduced at trial directly contradicts it. Richard Basham testified he freely consented to the search, without any coercion whatsoever, and denied that any law enforcement officer asked him to search Wilson's luggage. Wilson's stand-by counsel then cross-examined him on this agency issue and got nowhere. (This same exchange would presumably have occurred had the court held an evidentiary hearing on Wilson's theory.) Even assuming, *arguendo,* that the revolver should have been suppressed, the totality of the evidence produced at trial was more than enough to prove Wilson's guilt beyond a reasonable doubt.

### III.

Wilson also contends his two convictions for possession of a firearm as a convicted felon, under §§ 922(g) and 924(e), violate the double jeopardy clause of the fifth amendment. He claims these convictions were based on possession of the *same* firearm, for an uninterrupted period, amounting to multiple convictions for a single violation of the statute.

The double jeopardy clause protects against multiple punishments for the same crime, *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), and at least one court has held that possession of a firearm for an uninterrupted period constitutes a single violation of §§ 922(g) and 924(e). *See United States v. Jones,* 533 F.2d 1387 (6th Cir.1976) (possession of one firearm on three separate occasions constituted a continuing course of conduct and defendant could only be convicted on one count), *cert. denied,* 431 U.S. 964, 97 S.Ct. 2919, 53 L.Ed.2d 1059 (1977). However, we need not address the merits of Wilson's claim here because he waived it at trial. In *United States v.*

*Griffin,* 765 F.2d 677, 681–82 (7th Cir. 1985), we held that Rule 12(b)(2) of the Federal Rules of Criminal Procedure requires defendants to raise multiplicity challenges to indictments before trial, and that failure to do so amounts to waiver. This approach promotes fairness and efficiency by allowing courts to assess double jeopardy defects in indictments while evidence is still fresh, *id.* at 682, and by preventing defendants from making a tactical decision to delay raising such a challenge to make it more difficult, at trial or on appeal, for the prosecutor to reconstruct the evidence, much less justify multiple charges. *Id.* at 681.

While Wilson apparently perceived some double jeopardy defect in the superseding indictment before trial, he never attempted to bring it to the court's attention for redress. Indeed, he made efforts to preserve the purported error. For example, Wilson filed a *pro se* motion asking the court to stop his appointed counsel from filing a motion to sever the superseding counts from the original counts, apparently—from the language of the motion—because he saw a double jeopardy problem between the firearms counts contained in the original counts and those contained in the superseding counts. (Wilson raises a different double jeopardy argument on appeal, which we discuss below.) In Wilson's view, severance of the two would allow the government to drop charges on the original counts, and only pursue the superseding counts, putting an end to the double jeopardy problem and thus to his strategy of tainting his entire conviction. Wilson continued this strategy by filing a motion to proceed totally *pro se,* asserting that he wished to stop his appointed counsel, once and for all, from interfering with this strategy by filing *any* motions to dismiss or sever the superseding counts.

These two motions confirm that Wilson chose not to challenge the superseding indictment before or during trial for purely tactical reasons. This is precisely the sort of maneuver we sought to forestall by adopting the waiver rule in *Griffin.* By sitting on the double jeopardy issue, Wilson denied the government a chance to deal

with it before trial. *See id.* at 682. At any rate, Wilson raises a new double jeopardy argument on appeal. In his pretrial motions, he discerned a defect between the original and superseding firearms charges; on appeal he challenges a defect between the two firearms charges added in the superseding indictment.

### IV.

■ Wilson next challenges his two convictions for using a firearm in the commission of a violent crime under 18 U.S.C. § 924(c). This statute contains a mandatory enhanced prison term for defendants, like Wilson, who use a firearm in a crime of violence a second time. Wilson asks us to overturn our decision in *United States v. Bennett,* 908 F.2d 189 (7th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990), in which we held that the enhanced penalty provision of § 924(c) was applicable to a second offense charged in the *same* indictment, *accord United States v. Nabors,* 901 F.2d 1351, 1358 (6th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990); *United States v. Foote,* 898 F.2d 659, 668 (8th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 112, 112 L.Ed.2d 81 (1990); *United States v. Rawlings,* 821 F.2d 1543, 1545 (11th Cir.1987), *cert. denied,* 484 U.S. 979, 108 S.Ct. 494, 98 L.Ed.2d 492 (1987), in light of a recent amendment to § 924(c). Congress increased from 10 to 20 years the mandatory sentence for defendants who violate § 924(c) and Wilson argues this extreme punishment—5 years for a first violation plus 20 consecutive years for a second—is a justifiable basis to reexamine *Bennett.* He argues that a 25-year sentence, without possibility of parole, is unduly harsh and amounts to a life sentence merely for *carrying* a firearm during a crime. Wilson adds that, in his particular case, the gun was never discharged, no one was held hostage, and he actually robbed only one of the two banks (leaving the other for Trosper). Given the unduly harsh punishment dispensed under the new § 924(c), Wilson asks us to apply the doctrine of lenity, *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620,

99 L.Ed. 905 (1955), in reinterpreting the statute.

We decline the invitation. Only one other circuit has confronted this issue, *United States v. Hamblin,* 911 F.2d 551, 555 (11th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2241, 114 L.Ed.2d 482 (1991), and it, too, rejected an appeal to reinterpret the statute in light of the amendment. The decision to increase the mandatory term under § 924(c) in no way effects the rationale underlying our decision in *Bennett,* and its holding therefore survives the amendment.

### V.

■ In Wilson's reply brief he alleges that his sentence under § 924(c) violates the *ex post facto* clause of the constitution. U.S. Const. Art. I, § 9, cl. 3; Art. I, § 10, cl. 1. We generally decline to consider issues raised for the first time in a reply brief, Circuit Rule 28(f); *cf. Dribeck Importers, Inc. v. G. Heilman Brewing Co.,* 883 F.2d 569, 572 n. 8 (7th Cir.1989) (argument raised for the first time at oral argument), but exercise our discretion to do so here, given the seriousness of the issue and its apparent oversight by all concerned. *Cf. United States v. Belanger,* 936 F.2d 916, 920 (7th Cir.1991) (remand compelled after court discovered *sua sponte* an egregious sentencing error).

■ Wilson correctly points out that in August 1988, when the robberies took place, § 924(c) carried a 10, rather than 20-year mandatory sentence for a second firearms infraction. (Congress amended the provision on November 18, 1988.) At Wilson's sentencing hearing, all parties assumed the 20-year term applied, and Wilson was sentenced accordingly. This constitutes plain error. Fed.R.Crim.P. 52(b). Although the Sentencing Reform Act of 1984 requires courts to apply the guideline in effect on the date offenders are sentenced, 18 U.S.C. § 3553(a)(4) and (5), this provision is, of course, subject to the constraints of the *ex post facto* clause. *See Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987). We examine *ex post facto* claims applying

a two-part test: the law must apply to events occurring before its enactment and it must disadvantage the offender affected by it. *Id.*

Here, the amended statute clearly disadvantages Wilson (doubling the mandatory portion of his sentence) and it was applied retroactively to his criminal conduct. In drawing this conclusion, we recognize our dicta in *United States v. Bader,* 956 F.2d 708 (7th Cir.1992), which opined that retrospective application of guideline changes does not necessarily transgress the *ex post facto* clause. *Id.* at 709. We acknowledged that although sentencing guidelines may be "laws" for purposes of the *ex post facto* clause, *id.* (citing *Miller,* 482 U.S. at 430, 107 S.Ct. at 2451), retrospective application of some guideline changes—particularly those in which an offender is exposed to the same potential range of sanctions before and after the change—must be examined individually to determine whether the specific change exceeds constitutional constraints. *Id.* In this case, however, it is clear that retrospective application of the amended § 924(c) offends the *ex post facto* clause: it substantially increased the sanction for violation of the statute, it did so in a mandatory fashion, and it added a sanction (a 20–year mandatory term) not within the court's discretion under the prior version of the statute. *Compare United States v. Golden,* 954 F.2d 1413 (7th Cir. 1992) (no *ex post facto* violation occurred because guideline change procedural rather than substantive). Thus, we vacate and remand Wilson's sentence on the two § 924(c) convictions. We commend the government for its prompt sur-reply brief on this issue and for its candid acknowledgement of the sentencing error.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.