The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
June 28, 2018

## 2018COA89

**No. 2016CA1010 — Crimes — Forgery; Criminal Law — Jury Instructions — Series of Acts in a Single Count**

In this multiple transaction case, a majority of a division of the court of appeals reverses the defendant's forgery conviction, concluding that the trial court should have provided the jury with a modified unanimity instruction. Because it is likely to arise on retrial, the majority addresses and affirms the trial court's evidentiary ruling, but it declines to address the restitution issue.

As a matter of first impression, the dissent characterizes the multiple transactions as a duplicity issue and applies Crim. P. 12(b)(2) to find a waiver of the duplicity issue. The dissent agrees with the majority that the evidentiary ruling should be affirmed, but it addresses and rejects the defendant's argument that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), applies to restitution.

COLORADO COURT OF APPEALS     **2018COA89**

_____

Court of Appeals No. 16CA1010
El Paso County District Court No. 15CR4710
Honorable Marla R. Prudek, Judge

_____

The People of the State of Colorado,

Plaintiff-Appellee,

v.

De Etta Wester-Gravelle,

Defendant-Appellant.

_____

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE FREYRE
Berger, J., concurs
Bernard, J., dissents

Announced June 28, 2018

_____

Cynthia H. Coffman, Attorney General, Matthew S. Holman, First Assistant
Attorney General, Nicole D. Wiggins, Assistant Attorney General, Denver,
Colorado, for Plaintiff-Appellee

Gail K. Johnson, Alternate Defense Counsel, Boulder, Colorado, for Defendant-
Appellant

¶ 1    Defendant, De Etta Wester-Gravelle, appeals the judgment of conviction entered on a jury verdict finding her guilty of forgery, contending that the trial court committed plain error when it did not give the jury a modified unanimity instruction. She also appeals the order of restitution. Because we conclude that the trial court should have instructed the jury on unanimity, we reverse her conviction and remand for a new trial. Therefore, we need not decide the restitution issue. Because it may arise on retrial, we address her evidentiary issue and find no abuse of discretion.

## I.    Background

¶ 2    Wester-Gravelle worked as a certified nursing assistant for Interim Healthcare (Interim). Interim provides in-home care to patients. In 2015, Interim assigned Wester-Gravelle to care for William Moseley five days a week for two hours each day. Moseley is a veteran who suffered a stroke and is confined to a wheelchair. Interim paid Wester-Gravelle $30 per day and billed Veterans Affairs $51.74 per day for the two hours of care.

¶ 3    Moseley lived with his spouse, Erma Goolsby. On August 11, 2015 — a day that Wester-Gravelle was assigned to work — Wester-Gravelle's supervisor visited Moseley's home to recertify his

1

insurance. Wester-Gravelle never arrived for her assigned shift. When the supervisor asked Moseley and Goolsby whether they expected Wester-Gravelle to work that day, they told her that Wester-Gravelle had not been to their house for approximately three weeks. Wester-Gravelle, however, had submitted weekly shift charts for the preceding three weeks to receive payment. Each of the three weekly shift charts showed five of Moseley's purported signatures, acknowledging that Wester-Gravelle had arrived for her assigned shifts.

¶ 4 Interim initiated an investigation to determine whether Wester-Gravelle had forged Moseley's signature on the shift charts. Moseley and Goolsby told the investigator that they did not believe that Wester-Gravelle had been to their home for several weeks and that they were unsure, but did not think, they had signed the three disputed shift charts from July 17, July 24, and July 31. Wester-Gravelle submitted the shift chart covering the week of July 11-17 on July 20, 2015; the shift chart covering July 18-24 on July 27, 2015; and the shift chart covering July 25-31 on August 3, 2015. The record does not indicate how or where Wester-Gravelle submitted the shift charts.

¶ 5     The People charged Wester-Gravelle with one count of forgery between July 11 and July 31, 2015 and introduced three different shift charts into evidence for that time period.  It argued that Wester-Gravelle never went to Moseley's house during that period and, instead, forged his signature so she would be paid by Interim.  A jury convicted Wester-Gravelle, and the court sentenced her to two years' probation.

## II.     Unanimity Instruction

¶ 6     Wester-Gravelle contends that the trial court erred when it failed, on its own motion, to require the prosecution to elect a single forged shift chart as the basis for the conviction or to give a modified unanimity instruction.  Under the circumstances presented, we agree.

### A.     Preservation and Standard of Review

¶ 7     The People contend that Wester-Gravelle waived this issue by failing to object to the information under Crim. P. 12(b)(2) and (3), which requires a defendant to raise defenses or objections to an information and complaint within twenty-one days following arraignment.  As pertinent here, the rule further provides that "[f]ailure to present any such defense or objection constitutes a

3

waiver of it, but the court for cause shown may grant relief from the waiver." Crim. P. 12(b)(2).

¶ 8     The People argue that Wester-Gravelle obtained a "substantial strategic benefit" by not requesting an election by the prosecution under Crim. P. 12(b)(2), because a timely request for election would have allowed the prosecution to amend the information to charge each forgery separately, thereby increasing her criminal liability. We are not persuaded. Moreover, we respectfully disagree with the dissent both that Crim. P. 12(b)(2) applies under these circumstances and that it somehow causes a waiver (not a forfeiture) of Wester-Gravelle's duplicity claim.

¶ 9     Whether an information is duplicitous is a legal question that we review de novo. *United States v. Davis*, 306 F.3d 398, 414 (6th Cir. 2002); *People v. Walker*, 2014 CO 6, ¶ 26 ("Whether the information sufficiently charged Walker is a question of law we review de novo."); *People v. Melillo*, 25 P.3d 769, 777 (Colo. 2001) (sufficiency of information reviewed de novo). An information is duplicitous if it charges two or more separate and distinct crimes in one count. *See United States v. Haddy*, 134 F.3d 542, 548 (3d Cir. 1998); *Davis*, 306 F.3d at 415; *Melina v. People*, 161 P.3d 635, 644

(Colo. 2007) (Coats, J., concurring in the judgment only); *People v. Broncucia*, 189 Colo. 334, 337, 540 P.2d 1101, 1103 (1975).

¶ 10    The charged crimes are "separate" if each requires the proof of an additional fact that the other does not.  *Davis*, 306 F.3d at 416; *United States v. Adesida*, 129 F.3d 846, 849 (6th Cir. 1997); *Woellhaf v. People*, 105 P.3d 209, 214 (Colo. 2005).

¶ 11    Duplicity may or may not be obvious from the information itself.  If it is, then Crim. P. 12(b)(2) governs the raising and resolution of the claim.  *See Russell v. People*, 155 Colo. 422, 426, 395 P.2d 16, 18 (1964); *Critchfield v. People*, 91 Colo. 127, 131, 13 P.2d 270, 271 (1932) ("If the information is duplicitous, that fact is patent . . . ."); *see also People v. Zadra*, 2013 COA 140, ¶¶ 65-66 (*Zadra I*) (noting that federal appellate courts uniformly apply Fed. R. Crim. P. 12(b)(2) "where the defect is apparent from the face of the charges" (citing *United States v. Honken*, 541 F.3d 1146, 1153-54 (8th Cir. 2008); *United States v. Dixon*, 273 F.3d 636, 642 (5th Cir. 2001); *United States v. Klinger*, 128 F.3d 705, 708 (9th Cir. 1997); *United States v. McIntosh*, 124 F.3d 1330, 1336 (10th Cir. 1997))), *aff'd*, 2017 CO 18 (*Zadra II*).

¶ 12    But if, as in this case, duplicity is not obvious from the information itself and, instead, arises from the prosecution's presentation of evidence, then, for the reasons discussed below, Crim. P. 12(b)(2) simply does not apply.  *See Gill v. People*, 139 Colo. 401, 410, 339 P.2d 1000, 1005 (1959) ("Where the duplicity is not apparent until the evidence has been presented, the motion to quash may be made during the trial and when the duplicity is disclosed." (citing *Trask v. People*, 35 Colo. 83, 87, 83 P. 1010, 1012 (1905))).  In these circumstances, Colorado law is clear that Rule 12(b) does *not* require a defendant to object under Crim. P. 12(b)(2) when the error flows from circumstances that are not apparent from the charging document.  If there had been any doubt about this proposition, the supreme court put those doubts to rest in its recent decision in *Zadra II*, where it stated: "Crim. P. 12(b)(2) does not require a defendant to file a motion regarding any error that might later flow from the charging document."  ¶ 17 (citing *Reyna-Abarca v. People*, 2017 CO 15, ¶ 43).  And this court is bound by that law.  *People v. Houser*, 2013 COA 11, ¶ 32 (if our supreme court has established a categorical rule from which it has not deviated, we are bound to follow this precedent).

6

¶ 13    Here, the information charged Wester-Gravelle as follows:

### COUNT 1-FORGERY (F5)

Between and including July 11, 2015 and July 31, 2015, Deetta Wester-Gravelle with the intent to defraud Interim Healthcare, unlawfully, feloniously, and falsely made, completed, altered, or uttered *a written instrument* which was or which purported to be, or which was calculated to become or to represent if completed, a deed, will[,] codicil, contract, assignment, commercial instrument, promissory note, or other instrument which document did or may have evidenced, created, transferred, terminated, or otherwise affected a legal right, interest, obligation, or status, namely: *Home Care Aide Shift Charting Sheet*; in violation of section 18-5-102(1)(c), C.R.S.

(Emphasis added.)

¶ 14    Given the accepted definition of "duplicity," we discern no reasonable way of construing the complaint and information to charge two separate crimes, particularly when it specifies a single written instrument and identifies that instrument as a single shift charting sheet.  Because the "face of the charge" evidences no apparent defect, much less a duplicity defect, Crim. P. 12(b)(2) simply does not apply and could not cause a waiver of Wester-Gravelle's duplicity claim.

7

¶ 15    Rather, the duplicity problem (unanimity issue) arose only after the prosecution decided to introduce three different written instruments for the period charged, well after a Rule 12 objection (within twenty-one days after arraignment) could have been made. *Reyna-Abarca,* ¶ 43.  Indeed, had the prosecution decided to introduce only one shift chart sheet in accordance with the charge, no unanimity problem would exist.

¶ 16    The dissent seeks to rewrite the rule to provide that it somehow springs into effect when the duplicity problem first becomes recognizable, relying on the "good cause" language in the rule.  Completely apart from the supreme court's recent explicit rejection of this procedure in *Zadra II*, we are confident that if the supreme court intended such a "springing" operation of one of its rules, it would have said so.  We presume that the court does not enact its rules with the purpose of ensnaring the unwary.  Rather, the rules perform important purposes, none of which include catching criminal defendants unaware.

¶ 17    While we recognize that some federal courts apply the "good cause" provision to require a defendant to make a Rule 12 objection

during trial to avoid waiving (or at least forfeiting) their rights, given *Zadra II* we could not follow those cases even if we wanted to do so.

¶ 18    Instead, a duplicity challenge that is not made in the trial court when the defect becomes apparent is forfeited. Forfeiture has important consequences because forfeited claims are reviewed only for plain error. *Houser*, ¶ 32. Therefore, we agree with the divisions in *People v. Devine*, 74 P.3d 440, 443 (Colo. App. 2003), and *People v. Rivera*, 56 P.3d 1155, 1160-61 (Colo. App. 2002), that an unpreserved unanimity challenge should be reviewed for plain error, while acknowledging, as pointed out by the dissent, that neither of these cases considered Rule 12(b)(2).

¶ 19    Under the plain error standard, an appellate court first considers de novo whether the trial court was required to give a modified unanimity instruction. *People v. Vigil*, 2015 COA 88M, ¶ 38 (*cert. granted on other grounds* Mar. 20, 2017); *see also People v. Torres*, 224 P.3d 268, 278 (Colo. App. 2009) ("We review de novo whether the trial court was required to give a unanimity instruction."). If the court discerns error, it reverses only if the error was plain. Plain error is (1) an error, (2) that is obvious, and (3) that casts serious doubt on the reliability of the judgment of

9

conviction.  *Rosales-Mireles v. United States*, 585 U.S. \_\_\_, \_\_\_, 2018 WL 3013806, at *5 (June 18, 2018); *Hagos v. People*, 2012 CO 63, ¶ 14.  An error is obvious if it contravenes "(1) a clear statutory command; (2) a well-settled legal principle; or (3) Colorado case law."  *Scott v. People*, 2017 CO 16, ¶ 16 (citation omitted).

¶ 20    Plain error requires reversal if, after a review of the entire record, we can conclude with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Lehnert v. People*, 244 P.3d 1180, 1185 (Colo. 2010); *People v. Linares-Guzman*, 195 P.3d 1130, 1133 (Colo. App. 2008) ("In the context of an unpreserved claim of instructional error, the defendant bears the burden of demonstrating 'not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to [her] conviction.'") (citation omitted); *see also Rosales-Mireles*, 585 U.S. at \_\_\_, 2018 WL 3013806, at *5 (addressing the fourth prong of plain error and holding "the court of appeals should exercise its discretion to correct the forfeited error if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.")

(quoting *Molina-Martinez v. United States*, 578 U.S. \_\_\_, \_\_\_, 136 S. Ct. 1338, 1340, 194 L.Ed.2d 444 (2016)).

B.    Applicable Law

¶ 21    In Colorado, defendants enjoy a right to unanimous jury verdicts.  § 16-10-108, C.R.S. 2017; Crim. P. 23(a)(8); Crim. P. 31(a)(3); *Linares-Guzman*, 195 P.3d at 1134.  Unanimity in a verdict means only that each juror agrees that each element of the crime charged has been proven to that juror's satisfaction beyond a reasonable doubt.  *Linares-Guzman*, 195 P.3d at 1134; *People v. Lewis*, 710 P.2d 1110, 1116 (Colo. App. 1985).  "Generally, jurors need not agree about the evidence or theory by which a particular element is established . . . ." *People v. Vigil*, 251 P.3d 442, 447 (Colo. App. 2010); *see Lewis*, 710 P.2d at 1116 ("Jurors are not, however, required to be in agreement as to what particular evidence is believable or probative on a specific issue or element of a crime, particularly where there is evidence to support alternative theories as to how an element of a crime came to occur.").

¶ 22    But when the prosecution presents evidence of *multiple transactions*, any one of which would constitute the offense charged, and there is a reasonable likelihood that jurors may

11

disagree about which transaction the defendant committed, the court must either require the prosecution to elect the acts or series of acts on which it relies for a conviction or it must instruct the jury that to convict, the jury must agree that the defendant committed the same act or all of the acts included within the period charged. *Melina*, 161 P.3d at 639; *Thomas v. People*, 803 P.2d 144, 153 (Colo. 1990); *Rivera*, 56 P.3d at 1160. Without such a requirement, there is a substantial risk that a conviction may result from some jurors finding the defendant guilty of one act, while others convict based on a different act. *People v. Perez-Hernandez*, 2013 COA 160, ¶ 55. Indeed,

> [i]f the evidence presents a reasonable likelihood that jurors may disagree upon which [act or] acts the defendant committed, and the prosecution does not elect to stand upon a specific incident, jurors should be instructed that they must unanimously agree as to the specific act or agree that the defendant committed all the acts alleged. This requirement assures that the jury does not base its conviction upon some jurors finding that one act was committed, while others rely on a different act.

*Devine*, 74 P.3d at 443 (citation omitted).

¶ 23    Neither an election nor a modified unanimity instruction is required, however, when a defendant is charged with a crime encompassing incidents occurring in a *single transaction.  Melina,* 161 P.3d at 640-41; *People v. Greer,* 262 P.3d 920, 925 (Colo. App. 2011).  Regardless of how the prosecution charges a defendant, either an election or a unanimity instruction is required when the evidence "raises grave doubts whether the jurors' conviction was based upon a true unanimity, or whether different incidents formed the basis for the conclusion of individual jurors."  *Devine,* 74 P.3d at 443; *see also Rivera,* 56 P.3d at 1160 (finding reversal is required when "there is a reasonable likelihood that the jury could have disagreed concerning the act or acts defendant committed").

¶ 24    In *Devine,* the defendant was the conservator of a trust account belonging to her then fifteen-year-old son.  74 P.3d at 442.  Over more than four years and at approximately one-year intervals, she made five withdrawals from the trust account, each allegedly to purchase items for her son.  *Id.*  Later, her son discovered that the account was empty and informed the court that he was unaware of the withdrawals and had not received the items allegedly purchased by his mother.  *Id.*  The prosecution charged the defendant with one

13

count of theft spanning the four-year period, and the jury found her guilty. *Id.*

¶ 25 On appeal, Devine asserted that the trial court had denied her right to a unanimous verdict by failing to give the jury a special unanimity instruction. *Id.* Reviewing for plain error, a division of this court observed that the prosecution's single theft charge encompassed five discrete acts spanning a four-year period, and that each withdrawal was a completely separate transaction that was the subject of different testimony and evidence. *Id.* at 442-43. It reversed her conviction concluding that, "[i]n such a case, the failure to give a special unanimity instruction raises grave doubts whether the jurors' conviction was based upon a true unanimity, or whether different incidents formed the basis for the conclusion of individual jurors." *Id.* at 443.

### C. Analysis

#### 1. Single or Multiple Transactions

¶ 26 The prosecution charged Wester-Gravelle with a single count of forgery for the three-week period between July 11 and July 31, 2015. As relevant here, the forgery statute provides as follows:

14

(1) A person commits forgery, if, with intent to defraud, such person falsely makes, completes, alters, or utters a written instrument which is or purports to be, or which is calculated to become or to represent if completed: . . . (c) [a] deed, will, codicil, contract, assignment, commercial instrument, promissory note, check, or other instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status.

§ 18-5-102, C.R.S. 2017.

¶ 27    The parties do not dispute that the forgery charge was based on three separate shift charts for three different weeks: July 17, 2015, July 24, 2015, and July 31, 2015.  Instead, they dispute whether the prosecution presented evidence of multiple transactions, any of which would constitute the crime of forgery, or evidence of multiple incidents comprising a single transaction of forgery.  Thus, to determine whether there was a unanimity defect, we must first determine whether Wester-Gravelle's conduct constitutes a single transaction or multiple transactions.

¶ 28    To do this, we consider whether the Wester-Gravelle's actions (1) were legally separable; (2) occurred at different locations or were separated by intervening events; and (3) constituted new volitional departures in the course of conduct.  *See Quintano v. People*, 105

15

P.3d 585, 592 (Colo. 2005) (finding separate offenses where the "defendant had sufficient time to reflect after each encounter[;] . . . [e]ach incident occurred in a different location, or after the victim had left a location and returned there . . . [; and] the record reflects sufficient breaks between each incident to allow the defendant time to reflect"); *cf. Commonwealth v. Adams*, 694 A.2d 353, 355 (Pa. Super. Ct. 1997) ("[A] single transaction is defined as a crime or crimes which were committed by a defendant at a single time or in temporally continuous actions that are part of the same episode, event or incident . . . .").

¶ 29　In *Quintano,* our supreme court examined whether five sexual acts "involving the same victim, the same general location and the same day" required an election by the prosecution. *Id.* at 593. The defendant argued that the prosecution should have been required to elect specific acts for each count, even though the court provided a modified unanimity instruction. *Id.* at 594. The court explained that the defendant was charged and convicted of multiple transactions based on evidence of the different location of each act, the temporal breaks between the acts, and the separate volitional intents associated with each act. *Id.* at 593. It held that a modified

16

unanimity instruction was sufficient to ensure jury unanimity, *id.* at 593-94, and affirmed the rule that "where the prosecution did not or could not elect a specific act, the court should give a modified jury unanimity instruction," *id.* at 593.

¶ 30    Applying the *Quintano* factors here, we conclude that Wester-Gravelle's conduct amounted to multiple transactions that required either an election or a modified unanimity instruction.

¶ 31    First, the three shift charts are separated temporally. Wester-Gravelle submitted a different shift chart to Interim each week to receive her paycheck.  She submitted the July 17 shift chart on July 20, the July 24 shift chart on July 27, and the July 31 shift chart on August 3.

¶ 32    This temporal separation is greater than that described in *People v. Childress*, 2012 COA 116, ¶¶ 43-44, *rev'd in part on other grounds*, 2015 CO 65M, where a division of this court held that the failure to provide a modified unanimity instruction required reversal when the defendant committed multiple acts of child abuse over several hours in a single day.  *See also Quintano*, 105 P.3d at 592 (finding temporally separated distinct acts occurring the same day were multiple transactions); *People v. Estorga*, 200 Colo. 78, 82,

17

612 P.2d 520, 523 (1989) (requiring unanimity instruction where sexual assault occurred four or five times over a period of several months); *Devine*, 74 P.3d at 442 (concluding the prosecution must elect an act or the court must provide a unanimity instruction where the defendant committed five withdrawals at approximately one year intervals); *Rivera*, 56 P.3d at 1160 (reversing for failure to provide unanimity instruction where the defendant's conduct involved numerous transactions with twenty-five investors over a two-year period); *cf. People v. Collins*, 730 P.2d 293, 301 (Colo. 1986) (election or unanimity not required for first degree assault charge where numerous different assaults occurred at the same location on the same night); *People v. Hanson*, 928 P.2d 776, 779-80 (Colo. App. 1996) (concluding a unanimity instruction was not required when "the confrontations occurred in the same location and within a few minutes of each other, and arose out of the same set of circumstances and in conjunction with the same dispute").

¶ 33    Next, while the record does not reveal specifically to whom or how Wester-Gravelle actually submitted the shift charts, we are not convinced that this omission is determinative. In *Devine*, the defendant sought approval for each withdrawal of her son's money

18

from the probate court. *Devine*, 74 P.3d at 442. The court did not note how the defendant requested this approval or from where she withdrew the funds. *Id.* The important factor was the temporal separation between each withdrawal, and the court concluded this temporal separation was sufficient to require a unanimity instruction, without regard to the location. *Id.* at 443. As in *Devine*, Interim required Wester-Gravelle to prepare and submit a new shift chart each week she worked, thereby creating temporal separation between each act.

¶ 34    Further, we are not persuaded that *Vigil*, 2015 COA 88M, requires a different result. In *Vigil*, the defendant was charged with one count of burglary for conduct occurring on one night at one location. *Id.* at ¶ 43. The prosecution proved that he burglarized several buildings at that location. *Id.* Vigil argued that the court should have provided a modified unanimity instruction because the jury could have disagreed about the particular building he burglarized. *Id.* at ¶ 37. A division of this court rejected his argument and held that because the prosecution had charged the defendant with the burglary of multiple buildings, at one location, and in a single night, the defendant's conduct constituted a single

transaction, and that "the jury was not required to unanimously agree on *which* building was burglarized." *Id.* at ¶ 43.

¶ 35     In contrast, the record here reveals that Interim paid Wester-Gravelle for the work reflected on each shift chart covering a different period and submitted at different times. The evidence for each incident was different. Because the parties did not dispute these facts and only contested whether Wester-Gravelle forged Moseley's signature with the intent to defraud Interim, we conclude that where and how she submitted the shift charts is not dispositive of whether her conduct constituted multiple transactions or a single transaction.

¶ 36     Finally, the record reveals that Wester-Gravelle signed each shift chart on a different day to receive payment for a different period, evidencing a new volitional intent with the completion of each shift chart. *See Quintano*, 105 P.3d at 592 (emphasizing the "time to reflect" and the "new volitional departure" in determining whether there were separate offenses). We are not convinced by the People's argument that each individual act simply corroborated Wester-Gravelle's intent to defraud Interim. Rather, her signature on each shift chart reflects a separate intent to defraud her

20

employer and to receive payment for work not performed for a particular week. And, each shift chart represents a different "written instrument" under the forgery statute. When considered with the other two factors, we conclude that Wester-Gravelle's conduct constituted multiple transactions, any one of which supported a conviction of forgery.

¶ 37   We also are not persuaded by the People's argument that *Melina* requires a different result. In *Melina*, our supreme court concluded that multiple communications to different individuals soliciting murder constituted a single transaction of solicitation. 161 P.3d at 641. It reasoned that the defendant's multiple efforts to find someone to murder the victim constituted a single course of conduct, because each contact with a prospective accomplice did not establish a separate offense but, instead, reflected the defendant's efforts to accomplish his singular goal of murdering the victim. *Id.* at 640-42.

¶ 38   In contrast, the evidence here does not show numerous actions over a period of time corresponding with a single intent to defraud. Wester-Gravelle committed the crime of forgery each time she completed, signed, and submitted a shift chart with the intent

21

to be paid for a week of work she did not do. *See* § 18-5-102(1)(c) (Forgery requires "intent to defraud" when a "person falsely makes, completes, alters, or utters a written instrument" to "affect a legal right, interest, obligation, or status."); *cf. People v. Jacobs*, 91 P.3d 438, 433 (Colo. App. 2003) (concluding that evidence of at least thirty emails between the defendant and a detective in a child solicitation case constituted a single transaction because they were all to arrange a *single* date). Thus, she formed a new volitional intent with the creation and submission of each shift chart, requiring a modified unanimity instruction. *See People v. Ferguson*, 181 Cal. Rptr. 593, 596 (Cal. Ct. App. 1982) (requiring a unanimity instruction where the defendant was charged in one count with passing thirty-five bad checks, because each check represented a potentially separate and independent offense).

¶ 39 Finally, we are not persuaded that Wester-Gravelle's conduct was a "continuing course of conduct" constituting a single transaction. The People have not cited, nor are we aware of, any authority holding that the crime of forgery is a continuing offense. *See, e.g., People v. Allman*, 2017 COA 108, ¶ 13 (concluding that the plain language of the identity theft statute "is unambiguous and

22

indicates that the General Assembly did not intend for this offense to be a continuing crime") (*cert. granted* Mar. 5, 2018); *People v. Perez*, 129 P.3d 1090, 1092-93 (Colo. App. 2005) (stating the crime of impersonation is a continuing offense because the crime required a defendant to knowingly "assume[] a false or fictitious identity").

¶ 40 Therefore, we conclude that the prosecution's evidence presented a reasonable likelihood that the jurors may have disagreed on which shift chart constituted the forgery charged. Under these circumstances, the court should either have required the prosecution to elect an act on which it relied for a conviction or it should have instructed the jury that in order to convict, the jury had to unanimously agree on the act committed or unanimously agree that Wester-Gravelle committed all of the acts.

2. Obvious Error

¶ 41 Having concluded that an error occurred, we must decide whether the error was both obvious and substantial. *See Hagos*, ¶ 14. We begin by noting the numerous Colorado cases cited above holding that when the prosecution presents evidence of multiple transactions, any one of which could constitute the offense charged, and there is a reasonable likelihood that jurors may disagree about

23

which transaction the defendant committed, one of two things must occur — either the court may compel the prosecution to elect the act or series of acts on which it intends to rely for a conviction, or the defendant is entitled to a modified unanimity instruction advising the jury that it must unanimously agree on the act forming the basis of the conviction or that it must unanimously agree that all of the acts occurred. *See Melina*, 161 P.3d at 639; *Quintano*, 105 P.3d at 592; *Thomas*, 803 P.2d at 153; *Estorga*, 200 Colo. at 82, 612 P.2d at 523; *Vigil*, ¶ 38; *Perez-Hernandez*, ¶ 55; *Torres*, 224 P.3d at 278; *Devine*, 74 P.3d at 443; *Rivera*, 56 P.3d at 1160-61; *see also People v. Stackhouse*, 2018 CO 60, ¶ 3 (noting that in a C.R.C.P. 35(c) claim, the People conceded that the trial court erred in failing to provide a modified unanimity instruction in multiple transactions case). Indeed, this multiple transactions rule has existed for nearly forty years. *See Estorga*, 200 Colo. at 82, 612 P.2d at 523.

¶ 42     Additionally, the obviousness of the problem is further evidenced by our supreme court's criminal jury instructions committee providing a stock instruction for trial courts to use in cases where the evidence raises a duplicity issue. *See* COLJI-Crim.

24

E:11 (2017) ("In order to convict the defendant of [insert name of crime], you must either unanimously agree that the defendant committed the same act or acts, or that he [she] committed all of the acts alleged.")  Comment 1 to the instruction cites to the *Thomas* case and informs trial courts that "[t]his instruction is for ensuring jury unanimity with respect to the charged *act(s)* forming the basis for a finding of guilt."  COLJI-Crim. E:11 cmt. 1.

¶ 43    Considering this well-settled rule, the existence of a stock instruction acknowledging the well-settled rule, the fact that both the *Devine* and *Rivera* divisions reversed criminal convictions under the plain error standard, and the fact that the prosecution here introduced three separate shift charting sheets to support a single forged instrument, we conclude that the "obviousness" prong of the plain error standard is satisfied.

### 3.    Substantial Doubt

¶ 44    So, we finally turn to whether the error in failing to instruct the jury on unanimity was so "seriously prejudicial" as to warrant a new trial.  We conclude that it was.  The evidence revealed the following:

25

- At different points during his testimony, Moseley inconsistently testified that some of the signatures on the shift charts were his and that none of the signatures were his. Both cannot be true.

- The investigator said Moseley originally told him the signatures from the July 17 chart were his.

- Moseley and Goolsby said they believed that three of Moseley's four exemplar signatures, which undoubtedly were Moseley's because they were signed in front of the investigator, were not Moseley's.

- The supervising nurse testified that Goolsby told her on August 11, 2015, that Wester-Gravelle had not been at work for about three weeks.

- But, Goolsby testified that Wester-Gravelle never missed work for "blocks" of time.

- Goolsby testified that she sometimes signed documents for Moseley and that some of the signatures might be hers.

- A representative from Interim confirmed that spouses often sign for patients.[1]

¶ 45    When this contradictory evidence is considered along with the absence of a modified unanimity instruction, there is little doubt that the error casts serious doubt on the reliability of Wester-Gravelle's conviction and that there exists a reasonable likelihood that some jurors may have concluded one shift chart was forged while other jurors may have concluded a different shift chart was forged. *See Devine*, 74 P.3d at 443 (noting reversal under plain error required if "the record reveals a reasonable possibility that the error contributed to the conviction"); *Rivera*, 56 P.3d at 1161 (concluding failure to elect a specific act or provide unanimity instruction was plain error in embezzlement case).

---

[1] One of the jury's questions provides further evidence that the verdict may not have been unanimous. A question to the handwriting expert asked whether it was likely the questioned signatures were all written by the same author, and explained that the reason for the question was because the juror "believe[d] there to be inconsistencies with the signatures in question." *See People v. Castillo*, 2014 COA 140M, ¶ 2 ("[J]ury confusion evidenced by a jury question could demonstrate . . . prejudice.") (*cert. granted in part* Nov. 23, 2015).

¶ 46    We therefore reverse Wester-Gravelle's conviction and remand for a new trial.

### III.    Remaining Contentions

¶ 47    Because it may arise on remand, we address Wester-Gravelle's contention that the trial court improperly admitted Moseley's and Goolsby's lay opinions regarding Moseley's signatures.  She asserts that because Moseley and Goolsby inaccurately testified that three of Moseley's four exemplar signatures were not his, the testimony was not helpful to the jury and should have been excluded under CRE 701.  She further argues that the probative value of the lay opinions was substantially outweighed by the likelihood that this inaccurate testimony misled and confused the jury.  *See* CRE 403. We disagree.

### A.    Standard of Review and Applicable Law

¶ 48    A trial court has broad discretion to determine the admissibility of evidence.  *Venalonzo v. People*, 2017 CO 9, ¶ 24.  A court abuses its discretion only when its ruling is manifestly arbitrary, unreasonable, unfair, or contrary to law.  *People v. Hoskins*, 2014 CO 70, ¶ 17.  Absent a showing of an abuse of

28

discretion, we will not disturb a trial court's evidentiary rulings on appeal. *People v. Veren*, 140 P.3d 131, 136 (Colo. App. 2006).

¶ 49  Whether the court abused its discretion turns on whether Moseley and Goolsby's testimony was improper under CRE 701 and CRE 403. Rule 701 provides as follows:

> [i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue . . . .

¶ 50  CRE 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

### B.  Analysis

¶ 51  We begin by recognizing that the inaccuracies in Moseley's and Goolsby's testimony raise serious questions about their helpfulness to the jury. However, under the required deferential standard of review, we discern no abuse of discretion for three reasons.

29

¶ 52    First, lay witnesses may testify about their own observations and perceptions, *see* CRE 701(a), and the plain language of the rule contains no requirement that the opinion be accurate — that is for the jury to decide. *See People v. Singley*, 2015 COA 78M, ¶ 34 (explaining that the accuracy of a witness' physical description of the suspect is "more probative of weight than admissibility").

¶ 53    Second, Moseley's and Goolsby's testimony assisted the jury's understanding in several ways. It provided context for the jury's assessment of the reliability of the signatures; it helped the jury determine whether the questioned signatures were forged; and, it helped the jury assess witness credibility and, in particular, the effect of Moseley's stroke on his memory and perceptions.

¶ 54    Third, Wester-Gravelle does not explain and we fail to see how she was prejudiced by the inconsistent statements of the complaining witnesses. To the contrary, all of this contradictory evidence would seem to point out the weaknesses in the prosecution's case. Thus, we discern no abuse of discretion under CRE 701.

¶ 55    For the same reasons, we reject Wester-Gravelle's contention under CRE 403. As stated above, Moseley's and Goolsby's

testimony was relevant and helped the jury decide whether the shift chart signatures were forged. *See People v. Trujillo*, 2018 COA 12, ¶ 27 ("Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" (quoting CRE 401)). Moreover, "[t]he Colorado Rules of Evidence strongly favor the admission of relevant evidence." *People v. Brown*, 2014 COA 155M-2, ¶ 22.

¶ 56    Finally, defense counsel relied on this testimony in closing argument:

> [B]oth of them — not just Mr. Moseley, not just Ms. Goolsby — when the District Attorney showed them that exemplar, said, No, those aren't my signatures — three of the four, he said, No, that's not mine; one he said, That might be mine.
>
> He can either recognize his signatures or he can't. The District Attorney needs you to believe what he says for sure about the question[ed] ones, and then ignore what he said about his signatures on the exemplars that Investigator Fergon told you he had him sign.

¶ 57    We fail to see how Moseley's and Goolsby's testimony could confuse or mislead the jury given that defense counsel clearly

31

articulated how the evidence could assist the jury and in what way the jury should consider it. Therefore, we find no abuse of discretion.

¶ 58 Wester-Gravelle finally contends that the trial court erred when it entered a restitution order without a jury's factual findings under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny. Because we are reversing Wester-Gravelle's conviction, we need not decide this issue. *See Robertson v. Westminster Mall Co.*, 43 P.3d 622, 628 (Colo. App. 2001) (court does not render advisory opinions).

## IV.    Conclusion

¶ 59 The judgment of conviction is reversed and the case is remanded for a new trial.

JUDGE BERGER concurs.

JUDGE BERNARD dissents.

JUDGE BERNARD, dissenting.

¶ 60     I disagree with the majority's decision to reverse defendant's conviction.  I would, instead, affirm it.  I therefore respectfully dissent, and, as a result, I must analyze an additional issue concerning restitution that the majority did not discuss.

I.     Defendant Waived Her Duplicity Claim Because She Did Not Raise It Before Trial or, at the Latest, During Trial

A. Introduction

¶ 61     Defendant submitted three shift charts to the health care company in 2015 that covered the dates of July 11 to July 31.  The first shift chart covered the week of July 11-17, the second was for the week of July 18-25, and the third pertained to the week of July 25-31.

¶ 62     Defendant contends on appeal that the three shift charts constituted three separate transactions.  As a result, she continues, the trial court should have either (1) required the prosecution to elect one shift chart as the basis for the conviction; or (2) provided the jury with a proper unanimity instruction.  But she did not raise these points in the trial court; she raises them, instead, on appeal for the first time.

33

¶ 63     I reject defendant's contention that the trial court committed plain error when it did not, on its own, (1) require the prosecution to elect "an act on which it relied for a conviction"; or (2) instruct the jury that it had "to unanimously agree on the act committed or unanimously agree that [defendant] committed all of the acts."  I conclude, instead, that defendant waived her contentions about the forgery count, which involved a concept known as "duplicity."  She waived them because she did not file a pretrial motion under Crim. P. 12(b)(2) that asked the trial court to require such an election or to give such an instruction and because she did not raise the issue at trial.

## B. Duplicity

¶ 64     The alleged defect in the forgery count in this case was duplicity.  "Duplicity is the improper joining of distinct and separate offenses in a single count."  *United States v. Haddy*, 134 F.3d 542, 548 (3d Cir. 1998).  "Duplicitous counts may conceal the specific charges, prevent the jury from deciding guilt or innocence with respect to a particular offense, exploit the risk of prejudicial evidentiary rulings, or endanger fair sentencing."  *Id.* (citation omitted).

¶ 65    More specifically, a duplicitous count creates a significant risk, which has several permutations including that (1) "a jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or both[,]" *United States v. Cephus*, 684 F.3d 703, 706 (7th Cir. 2012)(quoting *United States v. Marshall*, 75 F.3d 1097, 1111 (7th Cir. 1996)); (2) "a jury could find a defendant guilty on a count without reaching a unanimous verdict on the commission of an offense[,]" *United States v. Renteria*, 557 F.3d 1003, 1008 (9th Cir. 2009); and (3) "a jury divided on two different offenses could nonetheless convict for the improperly fused double count," *United States v. Robinson*, 627 F.3d 941, 957 (4th Cir. 2010).

¶ 66    So how and when can a duplicity claim be raised?

### C. Crim. P. 12(b)(2) & (3)

¶ 67    Crim. P. 12(b)

- issues a command: "Defenses and objections based on defects . . . in the . . . information . . .[,] other than that it fails to show jurisdiction in the court or to charge an offense, may be raised only by motion," Rule 12(b)(2);

35

- prescribes when the command must be satisfied: "The motion shall be made within 21 days following arraignment," Rule 12(b)(3); and

- specifies the consequences of not complying with the command: "Failure to present any such defense or objection constitutes a waiver of it, but the court for cause shown may grant relief from the waiver," Rule 12(b)(2).

¶ 68    Our supreme court has held that a defendant must raise the issue of whether a count was duplicitous before trial via a Rule 12(b)(2) motion, or the defendant waives it. *Russell v. People*, 155 Colo. 422, 426, 395 P.2d 16, 18 (1964)("[A] duplicitous count in a criminal information is only a matter of form, and exceptions which go merely to form must be made before trial." (citing Rule 12(b)). This concept has deep roots in Colorado's jurisprudence. *Melina v. People*, 161 P.3d 635, 644 (Colo. 2007)(Coats, J., concurring in the judgment only)("It was well-settled . . . long before adoption of the rules of criminal procedure, and remains the case today, that an objection on the grounds of duplicity must be raised, at least in the absence of good cause, before trial."); *Specht v. People*, 156 Colo. 12,

16, 396 P.2d 838, 840 (1964)("[A]n attack on the ground of duplicity is only a matter of form, and must be made before trial."); *Critchfield v. People*, 91 Colo. 127, 131, 13 P.2d 270, 271 (1932)("If the information is duplicitous, that fact is patent, and the question must be presented either by motion to quash or demurrer, and this in limine, because the rule against duplicity is for the benefit of defendant, and he may waive it."); *Kingsbury v. People*, 44 Colo. 403, 404, 99 P. 61, 62 (1908)(If a count is duplicitous, "the defendant may waive the objection, as he has done in this case, because no motion or other objection to the information upon this ground was made below, and it is raised for the first time upon this review.").

¶ 69    The forgery count in this case directly presented defendant with the possibility that it was duplicitous on its face.  As is pertinent to my analysis, it read that, "[b]etween and including July 11, 2015 and July 31, 2015," defendant, with the intent to defraud the health care company, "unlawfully, feloniously, and falsely made, completed, altered, or uttered a written instrument . . . namely: Home Care Aide Shift Charting Sheet . . . ."  And defendant should

37

have been aware that she had submitted three shift charts during the period charged in the forgery count.

¶ 70 Defendant did not file any Rule 12(b)(2) motion alleging that the forgery count was duplicitous, let alone one within twenty-one days of her arraignment, and she did not raise the issue at trial. Based on Rule 12(b)(2) and the supreme court authority that I cited previously, I therefore conclude that defendant waived the duplicity contention that she raises on appeal. And a waiver leaves nothing for an appellate court to review. *People v. Rodriguez*, 209 P.3d 1151, 1160 (Colo. App. 2008), *aff'd*, 238 P.3d 1283 (Colo. 2010).

¶ 71 Next, defendant has not provided any good cause for why she did not file a Rule 12(b)(2) motion before trial. "[T]he 'good cause' necessary to avoid waiver must be a cause why the defendant failed to raise the argument below." *United States v. Baker*, 713 F.3d 558, 561 (10th Cir. 2013)(citation omitted). "[G]ood cause [is] lacking when '[t]he record show[ed] that sufficient information was available to defense counsel before trial that would have enabled him to frame his'" argument. *Id.* (citation omitted). Defendant has not offered any explanation of why she did not raise her duplicity claim before trial; I would therefore conclude that she has waived it. *See*

38

*United States v. Trammell*, 133 F.3d 1343, 1354 (10th Cir. 1998)(The defendant did not offer the court "any cause to justify his failure to challenge his indictment before trial.").

¶ 72    What if I assume that the forgery count in this case *may* not have placed defendant and her counsel on notice that it might be duplicitous when they first read it?  Once the defense received the prosecution's discovery, it became clear that the count presented a potential duplicity problem: it would take three separate documents for the prosecution to prove forgery over the alleged period.  *See State v. Schroeder*, 804 P.2d 776, 781 (Ariz. Ct. App. 1990)("[D]efendant had undertaken discovery and he was not in doubt as to the specifics of the acts to which the indictment related."); *People v. Jones*, 792 P.2d 643, 657 (Cal. 1990)("In addition to the advance notice provided by the information and preliminary examination, the . . . defendant may learn further critical details of the [prosecution's] case through . . . pretrial discovery procedures."); *cf. Cohen v. United States*, 378 F.2d 751, 754 (9th Cir. 1967)(A count of the indictment "was not rendered duplicitous because the bill of particulars and subsequent proof related to a series of calls, even though each might have been

39

alleged as a separate violation."); *United States v. Shorter*, 608 F. Supp. 871, 880 (D.D.C. 1985)("[T]he charges have been so fully amplified by the government's papers and by the discovery it has provided to defendant that lack of adequate notice cannot legitimately be asserted."), *aff'd*, 809 F.2d 54 (D.C. Cir. 1987); *State v. Germonto*, 868 P.2d 50, 58 (Utah 1993)("Because [duplicity] is a rule of pleading rather than substance, it may be cured by such devices as . . . a bill of particulars . . . .").  So defendant should have filed her Rule 12(b)(2) motion after she had obtained discovery, alleging that she had good cause to file it more than twenty-one days after her arraignment.

¶ 73     What if I next assume that the duplicity defect in the forgery count in this case would only have become evident during the prosecution's presentation of evidence at trial?  Such circumstances could also amount to good cause for the purposes of Rule 12(b)(2). *See Gill v. People*, 139 Colo. 401, 410, 339 P.2d 1000, 1005 (1959)("Where the duplicity is not apparent until the evidence has been presented, the motion to quash may be made during the trial and when the duplicity is disclosed."); *see also United States v.*

*Lyons*, 703 F.2d 815, 821 (5th Cir. 1993); *United States v. Diana Shipping Servs., S.A.*, 985 F. Supp. 2d 719, 726 (E.D. Va. 2013).

¶ 74     Even so, defendant did *not* raise a duplicity objection during the trial, which denied the prosecution the opportunity to cure the defect and the court the opportunity to provide the jury with a unanimity instruction.  And she has not offered an explanation amounting to good cause for why she did not do so.  So, again, I would "refuse to consider the belatedly-raised duplicity claim[]." *Lyons*, 703 F.2d at 821; *accord United States v. Ibarra-Diaz*, 805 F.3d 908, 930-31 (10th Cir. 2015)(The defendant "argue[d] that the duplicitous nature of the indictment did not become apparent until during trial.  However, even assuming this is correct, [the defendant] did not act then — when the ostensible defect surfaced. That is, [the defendant] did not raise a duplicity objection during trial.  He offers no explanation for this failing, and we deem it fatal.")(footnote omitted); *State v. Rushton*, 837 P.2d 1189, 1190 (Ariz. Ct. App. 1992)("Failure to object to duplicity either prior to or during trial constitutes a waiver of that objection."); *Ko v. United States*, 722 A.2d 830, 836 n.17 (D.C. 1998)("By failing to assert the claim of duplicity at trial, [the defendant] waived it."); *People v.*

*Allen*, 24 N.E.3d 586, 591 (N.Y. 2014)("[W]e hold that issues of non-facial duplicity, like those of facial duplicity, must be preserved for appellate review" because "[r]equiring preservation will prevent unnecessary surprise after the conduct of a complete trial.").

¶ 75 I do not think that *People v. Devine*, 74 P.3d 440, 443 (Colo. App. 2003), and *People v. Rivera*, 56 P.3d 1155, 1159-61 (Colo. App. 2002), dictate a different result. Although both of those cases reviewed unpreserved duplicity contentions for plain error, the divisions did not discuss whether Rule 12(b)(2) was applicable, probably because the parties had not raised its applicability. The prosecution has raised the applicability of Rule 12(b)(2) in this case.

¶ 76 I recognize that Fed. R. Crim. P. 12(e) used to be substantially similar to Rule 12(b)(2), *see People v. Zadra*, 2013 COA 140, ¶ 66, (*Zadra I*), *aff'd on other grounds*, 2017 CO 18 (*Zadra II*), employing the word "waiver." But the federal rule was amended in 2014. 1A Charles Alan Wright, Andrew D. Leipold, Peter J. Henning & Sarah N. Welling, *Federal Practice and Procedure* § 193, Westlaw (4th ed. database update Apr. 2018). Fed. R. Crim. P. 12(c)(3) now reads: "If a party does not meet the deadline for making a [Fed. R. Crim. P.]

12(b)(3) motion, the motion is untimely.  But a court may consider the defense, objection, or request if the party shows good cause.”

¶ 77    Some courts have held that the removal of the word “waiver” opened the door to plain error review.  *United States v. Sperraza*, 804 F.3d 1113, 1119 (11th Cir. 2015).  I concede that other courts reached a similar conclusion before the 2014 amendment of Fed. R. Crim. P. 12.  *See Robinson*, 627 F.3d at 957 (collecting cases)(“Several courts . . . have held that newly raised duplicity claims that go beyond technicalities to allege that the conviction could have rested on an impermissibly divided jury deserve plain error review.”); *United States v. Johnson*, 415 F.3d 728, 730 (7th Cir. 2005)(“[A] true waiver occurs only through an intentional relinquishment of an argument, while a forfeiture is the result of a neglectful failure to pursue an argument.”); *accord Zadra I*, ¶¶ 66-71.

¶ 78    But our supreme court has not amended Crim. P. 12(b)(2) in the four years since Fed. R. Crim. P. 12 was amended.  It certainly could do so, and it may do so.  But, until it does, Rule 12(b)(2)’s reference to waiver remains in force.  I therefore think that Rule 12(b)(2) “says what it means and means what it says,” so “[g]reat

weight must be given to the plain language of the rule . . . ." *United States v. Walker*, 665 F.3d 212, 218 (1st Cir. 2011)(discussing the waiver language in Fed. R. Crim. P. 12). I would therefore "join the . . . view [of a majority of the circuits] and hold that a failure to challenge a defect in an indictment before trial, as required by [Rule 12(b)(2)], results in an unreviewable waiver of that challenge . . . ." *Id.* at 228.

¶ 79 A waiver is an "intentional relinquishment of a known right or privilege." *People v. Rediger*, 2018 CO 32, ¶ 39 (quoting *Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984)). It is clear that the right to file a pretrial motion in this case was known, because Rule 12(b)(2) gave the world notice of its existence. It is also clear that Rule 12(b)(2) gave the world notice that the consequence of not complying with the rule was waiver of the right.

¶ 80 But does it matter that defendant did not expressly waive her right to file a Rule 12(b)(2) motion? Does that mean that she did *not* waive her right to file such a motion? Relying on *United States v. Olano*, 507 U.S. 725 (1993), and *Stackhouse v. People*, 2015 CO 48, I answer these questions "no."

D. *Olano* and *Stackhouse*

44

### 1.    *Olano*

¶ 81    The United States Supreme Court has made clear that not all waivers require courts to conduct extended conversations with defendants.  "[W]hether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake."  *Olano*, 507 U.S. at 733.

¶ 82    "For certain fundamental rights, the defendant must personally make an informed waiver."  *New York v. Hill*, 528 U.S. 110, 114 (2000).  These fundamental rights include, for example, the right to counsel, *Johnson v. Zerbst*, 304 U.S. 458, 464-65 (1938); the right to a jury trial, *People v. Walker*, 2014 CO 6, ¶ 16; the rights a defendant gives up when pleading guilty, *Boykin v. Alabama*, 395 U.S. 238, 243 (1969); and the right to testify at trial, *People v. Curtis*, 681 P.2d 504, 512 (Colo. 1984).

¶ 83    "For other rights, however, waiver may be effected by action of counsel."  *Hill*, 528 U.S. at 114.  "Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has — and

must have — full authority to manage the conduct of the trial." *Taylor v. Illinois*, 484 U.S. 400, 417-18 (1988)(footnote omitted). Indeed, "[t]he adversary process could not function effectively if every tactical decision required client approval." *Id.* at 418.

¶ 84    "In most instances the attorney will have a better understanding of the procedural choices than the client; or at least the law should so assume." *Gonzalez v. United States*, 553 U.S. 242, 249 (2008). "The presentation of a criminal defense can be a mystifying process even for well-informed lay persons. This is one of the reasons for the right to counsel." *Id.* And, because we entrust these decisions to counsel, "[a]bsent a demonstration of ineffectiveness, counsel's word on such matters is the last." *Hill*, 528 U.S. at 115.

¶ 85    To this end, attorneys can waive many of a defendant's rights. For example, *United States v. Ahern*, 76 M.J. 194 (C.A.A.F. 2017), relying on language in Mil. R. Evid. 304(f)(1), held that counsel's failure to file motions to suppress or objections to statements or derivative evidence before the "submission of plea" "constitutes a waiver of the objection." *Id.* at 197 (quoting Mil. R. Evid. 304(f)(1)) (emphasis omitted).

¶ 86    For other examples, an attorney can waive (1) a defendant's statutory right to speedy trial under the Interstate Agreement on Detainers, *Hill*, 528 U.S. at 115; (2) a defendant's right to have an Article III judge preside over jury selection in a criminal trial, agreeing that a federal magistrate judge can do so instead, *Gonzalez*, 553 U.S. at 250; (3) a defendant's right to confront a witness during trial, *Cropper v. People*, 251 P.3d 434, 435 (Colo. 2011); and (4) any objection to a court viewing video evidence outside of the defendant's presence, *People v. Young*, 996 N.E.2d 671, 676 (Ill. App. Ct. 2013).

¶ 87    In fact, "the provisions of" the rules of criminal procedure are "presumptively waivable . . . ." *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995)(discussing the Federal Rules of Criminal Procedure). And, at least in the Tenth Circuit, "a defendant's failure to 'timely challenge his indictment [pretrial] on duplicity grounds . . . waive[s] any later challenge based on a failure to use a special verdict form to avoid the alleged duplicity problem.'" *United States v. Haber*, 251 F.3d 881, 888-89 (10th Cir. 2001)(quoting *Trammell*, 133 F.3d at 1354); *accord Ibarra-Diaz*, 805 F.3d at 930-31; *see also United States v. Burke*, 633 F.3d 984, 991 (10th Cir.

2011)("[W]e hold that [Fed. R. Crim. P. 12's] waiver provision, not [Fed. R. Crim. P. 52's] plain error provisions, governs motions to suppress evidence, including specific arguments . . . raised for the first time on appeal. Such motions and arguments are waived absent a showing of good cause for why they were not raised below.").

## 2. *Stackhouse*

¶ 88    Our supreme court applied *Olano* in *Stackhouse.* In doing so, it concluded that the defendant had waived his right to a public trial because his attorney had not objected to the trial court's decision to close the courtroom. *Stackhouse,* ¶ 17. Specifically, the court reasoned that

- "only a select few rights are so important as to require knowing, voluntary, and intelligent waiver to be personally executed by the defendant[,] [and] [t]he right to a public trial is not among these[,]" *id.* at ¶ 15;

- "the right to a public trial 'falls into the class of rights that defense counsel can waive through strategic decisions[,]'" *id.* (quoting *Hinojos-Mendoza v. People*, 169 P.3d 662, 669 (Colo. 2007));

- "'we presume that attorneys know the applicable rules of procedure,' and we thus 'can infer from the failure to comply with the procedural requirements that the attorney made a decision not to exercise the right at issue[,]'" *id.* at ¶ 16 (quoting *Hinojos Mendoza*, 169 P.3d at 670);

- "it has long been the rule in Colorado that defense counsel must object to a known closure to preserve appellate review on public trial grounds[,]" *id.*; and

- "because legitimate strategic considerations might motivate counsel to not object to a closure, and because such strategic decisions should not be permitted to provide an appellate parachute to non-objecting defense counsel if the defendant is convicted, Colorado has long treated defense counsel not objecting to a known closure as an affirmative waiver of the public trial right," *id.*

¶ 89 Transferring the reasoning from *Stackhouse* to this case, I conclude that (1) the right in this case — filing a Crim. P. 12(b)(2) motion — is not so fundamental that it would require a defendant to personally execute a knowing, voluntary, and intelligent waiver of

49

the right; (2) the right to file a Rule 12(b)(2) motion is one of those that defense counsel can waive because of a strategic decision; (3) defendant's counsel was presumed to be aware of Rule 12(b)(2), and it is appropriate to infer that he made a decision not to file a Rule 12(b)(2) motion; (4) Rule 12(b)(2) has long required defendants to file motions or waive them; and (5) defendant therefore waived the right to raise the duplicity issue in this appeal.

¶ 90 What would a strategic reason be for defense counsel to decide not to file a Rule 12(b)(2) motion? One answer is to gain an advantage by delaying the challenge. What would that advantage be? "[T]o make it more difficult, at trial or on appeal, for the prosecutor to reconstruct the evidence, much less justify . . . [the] charge[]." *United States v. Wilson*, 962 F.2d 621, 626 (7th Cir. 1992). In other words, "[b]y sitting on the [duplicity] issue, [defendant] denied the government a chance to deal with it before trial." *Id.*; *see also Rushton*, 837 P.2d at 1191 ("If, upon a timely objection by the defense, the indictment had been dismissed without prejudice, the state could have then charged defendant with at least three counts of indecent exposure, one as to each victim, subjecting defendant to the possibility of multiple

convictions and multiple penalties. While defendant risked, in the alternative, the possibility of a non-unanimous guilty verdict on the single charge as alleged, his failure to object to the indictment indicates a risk he was willing to take. Defendant simply gambled and lost and cannot now be heard to complain."); *People v. Becoats*, 958 N.E.2d 865, 868 (N.Y. 2011)("To allow an unpreserved claim of duplicitousness to be raised on appeal would open the door to abuse. Defendants accused of multiple offenses may not much care how many counts they face, or may prefer to face one count (and thus one conviction) rather than several. Under the rule defendants here seek, it would be possible for them to make that choice at trial by letting a duplicitous indictment stand without objection, and make the opposite choice on appeal; they might thus obtain a new trial on the basis of an error they consciously decided not to challenge because they thought it was insignificant, or welcomed it.").

¶ 91    The prospect that defense counsel might seek such an advantage was one of the factors that *led to the adoption* of Rule 12(b)(2). "This provision sharply restricted the defense tactic of 'sandbagging' that was available in many jurisdictions under

common law pleading." 5 Wayne R. LaFave, Jerold H. Israel, Nancy. J. King & Orin S. Kerr, *Criminal Procedure* § 19.1(d), Westlaw (4th ed. database updated Dec. 2017). If defense counsel saw a defect in the charging document, they "often would forego raising the defect before trial, when a successful objection would merely result in an amendment of the pleading (or a new pleading)." *Id.* They would instead wait to see what happened with the case. "If the trial ended in a conviction, counsel would then raise the defect on a motion in arrest of judgment and obtain a new trial." *Id.* Rule 12(b)(2) "eliminated this tactic as to all pleading objections except the failure to show jurisdiction or to charge an offense." *Id.*

¶ 92 Similarly, the Wyoming Supreme Court recently pointed out that "[t]here are obvious reasons behind the rule that a duplicity claim is waived if not raised before trial." *Triplett v. State*, 406 P.3d 1257, 1261 (Wyo. 2017). A pretrial motion can push the prosecution to elect the offense on which it will proceed, thereby "correcting the problem." *Id.* And it would be "manifestly unfair for a defendant to sit silently by, take his chances with the jury, and then be allowed to ambush the prosecution through a post-trial attack." *Id.* at 1261-62 (quoting *Walker*, 665 F.3d at 228); *see also*

*Melina,* 161 P.3d at 645 (Coats, J., concurring in the judgment only)("[T]here are . . . clear risks associated with objecting to a charge as duplicitous before jeopardy attaches and potential advantages in not doing so, which introduce an element of tactical choice into the exercise of timely duplicity objections.").

¶ 93    This case is unlike *Rediger.*  In that case, the record did not show that the defendant had "intended to relinquish his right to be tried in conformity with the charges set forth in his charging document when he generally acquiesced to the jury instructions." *Rediger,* ¶ 42.  As a result, the defendant had not waived his right to object to the particular instruction; he had forfeited it instead, which led the supreme court to review for plain error.  *Id.* at ¶ 47.

¶ 94    The waiver rule in this case does not involve jury instructions. It concerns an issue that Rule 12(b)(2) requires defendants to raise before trial, or, if they can show good cause, during trial.  And the application of the waiver rule in this case is based on much more than "general[] acquiescence[]."  *See id.* at ¶ 42.  Applying *Stackhouse,* I conclude that it incorporates a right that is not so fundamental that only a defendant can waive it; a right that defense counsel can waive for strategic reasons; the presumption that

defense counsel are aware of Rule 12(b)(2); notice, embodied in Rule 12(b)(2), requiring defense counsel to raise the issue before trial unless they can show good cause to obtain relief from the pre-trial requirement; and clear language in Rule 12(b)(2) stating that failure to comply with the rule results in a waiver of the right. This language was adopted to directly address strategic considerations that might motivate defense counsel to refrain from raising an issue before or during trial.

¶ 95    But is this analysis swimming upstream against currents of change reflected by *Reyna-Abarca v. People*, 2017 CO 15, ¶¶ 40-47?

### E. *Reyna-Abarca*

¶ 96    *Reyna-Abarca* concerned multiplicity, which is an analytical cousin of duplicity. *See* 1A Wright, Leipold, Henning & Welling, § 142.

¶ 97    "Multiplicity is the charging of a single offense in separate counts of an indictment." *United States v. Kennedy*, 682 F.3d 244, 254 (3d Cir. 2012). "A multiplicitous indictment risks subjecting a defendant to multiple sentences for the same offense, an obvious violation of the Double Jeopardy Clause's protection against cumulative punishment." *Id.* at 255.

¶ 98    Our supreme concluded in *Reyna-Abarca* that Rule 12(b)(2) did not bar unpreserved multiplicity claims that resulted in double jeopardy problems because

- prosecutors can file multiple charges based on one set of facts, so "the mere fact that the [prosecution] charged an offense and also a lesser included offense does not render the charging document defective[,]" *Reyna-Abarca,* ¶ 41;

- a double jeopardy claim does not arise until a defendant is convicted, so "at the pleadings stage, [a] defendant[] had no viable double jeopardy claim to raise under" Rule 12(b)(2), *id.* at ¶ 42;

- the supreme court did not "perceive [anything] in [Rule 12(b)(2)] that requires a defendant to file a motion regarding any error that might later flow from the charging document, including . . . a double jeopardy error[,]" *id.* at ¶ 43;

  - "merely charging multiple counts is proper and, thus, does not constitute a defect in the charging document[,]" *id.*;

- o "a later-arising double jeopardy issue is not based on, and does not flow from, any defect in the charging document," *id.*;

- o "[t]o conclude otherwise would substantially expand the reach of [Rule 12(b)(2)][,]" *id.*; and

- the supreme court had not "seen [any] applicable authority, and the [prosecution] cite[d] none, supporting [the prosecution's] contention that defendants must 'bookmark' a future double jeopardy claim at the pleadings stage," *id.* at ¶ 44.

¶ 99    I think that the duplicity problem in this case is distinguishable from the multiplicity/double jeopardy problem in *Reyna-Abarca.*

¶ 100    First, as I explained above, our supreme court has held that duplicity claims are subject to Rule 12(b)(2). *Reyna-Abarca* did not cite any supreme court cases that had previously reached the same conclusion about multiplicity claims, and I could not find any.

¶ 101    Second, multiplicity problems are caused by two or more counts, so a multiplicity/double jeopardy problem does not arise until a defendant is convicted of two or more counts. *See id.* at

¶ 42. But duplicity problems occur within one count. A defendant has a viable duplicity claim to raise under Rule 12(b)(2) at the pleadings stage, *see id.*, and duplicity problems flow directly from the charging instrument, *see id.* at ¶ 43.

¶ 102    Third, there are two ways in which a trial court can remedy a duplicitous count. The court "must either require the prosecution to elect the transaction on which it relies for conviction, or instruct the jury that to convict the defendant it must unanimously agree that the defendant committed the same act[,]" *Rivera*, 56 P.3d at 1159-60, or all of the acts, *Melina*, 161 P.3d at 639. These two remedies require some action *before* the jury begins its deliberations, not *after* the jury has rendered its verdict.

¶ 103    Fourth, I realize that the supreme court stated in *Zadra II*, ¶ 17, a companion case to *Reyna-Abarca*, that Rule 12(b)(2) "does not require a defendant to file a motion regarding any error that may later flow from the charging document." But I think that this statement was made in the context of describing why Rule 12(b)(2) does not apply to multiplicity challenges because the error does not necessarily appear until after a jury verdict. The supreme court was not faced with the duplicity issue that arose in this case.

¶ 104    Our supreme court has observed, citing Rule 12(b)(2), that "[o]bjections to the form of an information must be made before trial or they are waived." *People v. Williams*, 984 P.2d 56, 64 (Colo. 1999).  Indeed, Rule 12(b)(2) "provide[s] that defenses and objections based on *defects in the information*, other than it fails to show jurisdiction in the court or to charge an offense, may be raised only by motion, and failure to thus present any such defense or objection constitutes a waiver of it."  *Mora v. People*, 172 Colo. 261, 263-64, 472 P.2d 142, 143 (1970)(emphasis added); *accord People v. Dickinson*, 197 Colo. 338, 339, 592 P.2d 807, 808 (1979).

¶ 105    And a duplicity objection goes to the form of the information. *Specht*, 156 Colo. at 16, 396 P.2d at 840 (characterizing an attack on the information on the grounds of duplicity as one "with respect to the form of the information" and stating that the attack "must be made before trial"); *Russell*, 155 Colo. at 426, 395 P.2d at 18 ("[A] duplicitous count in a criminal information is only a matter of form, and exceptions which go merely to form must be made before trial."); *accord Lyons*, 703 F.2d at 821.

¶ 106    Even if the prospect of duplicity does not become apparent until trial, the problems associated with duplicity flow from how the

prosecution charged the count in the information. And the grounds for granting a defendant relief involve deficiencies *in the count. See People v. Perez-Hernandez*, 2013 COA 160, ¶ 55 ("When the prosecution presents evidence of multiple transactions, any one of which would constitute *the offense charged*, and there is a reasonable likelihood that jurors may disagree about which transaction the defendant committed, there is a risk that a conviction may result from some jurors finding the defendant guilty of one act, while others convict based on a different act.")(emphasis added).

## II. The Jury Was Not Required to Make Factual Findings to Support the Trial Court's Restitution Order

¶ 107 The trial court ordered defendant to pay $822.66 in restitution, including prejudgment interest. During the trial, the prosecution presented evidence that the health care company paid defendant $450 for the period covered by the three shift charts. Defendant now contends that the trial court could not order her to pay the difference between $450 and $822.76 without having the *jury* make express factual findings that she owed the health care company the difference. She relies on *Southern Union Co. v. United*

*States*, 567 U.S. 343, 350-52 (2012), in which the United States Supreme Court held that the requirement of jury fact-finding established by *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), applies to fines in criminal cases.

¶ 108    Defendant did not raise this contention during the sentencing hearing.  The prosecution adds that she waived it because defense counsel stated that, "I don't see an objection [to the restitution order].  [Defendant] might, but I think that it reflects[,] with interest [and] the discovery[,] . . . the facts that were presented at trial."  Although this issue is somewhat close, I disagree with the prosecution because I think that, when viewed in context, defense counsel was not expressing a blanket acceptance of the restitution order.  Rather, counsel was responding to defendant's assertion that the health care company owed her money.  Counsel made this clearer by adding, "I can tell the [court], based" on defendant's assertion, that "I'm not filing an objection to the restitution."

¶ 109    Next, defendant asserts that we should review this contention de novo: the restitution order was illegal because part of it was not based on necessary jury findings of fact.  *See People v. Fransua*, 2016 COA 79, ¶ 17 ("[A] defendant may raise a claim at any time

60

that his or her sentence was not authorized by law.")(*cert. granted* Dec. 5, 2016). The prosecution responds that we should review the contention for plain error. *See People v. Banark*, 155 P.3d 609, 611 (Colo. App. 2007). I do not need to stumble into this thicket because defendant's claim would fail as a matter of law under either standard of review.

¶ 110 *People v. Smith*, 181 P.3d 324, 327 (Colo. App. 2007), held that the requirement of jury fact-finding established by *Apprendi* does not apply to restitution orders "because the states' restitution statutes do not set a maximum restitution amount that can be ordered." *Accord State v. Huff*, 336 P.3d 897, 902-03 (Kan. Ct. App. 2014)(citing *Smith*); *State v. Maxwell*, 802 N.W.2d 849, 851-52 (Minn. Ct. App. 2011)(citing *Smith*).

¶ 111 Defendant counters that *Southern Union Co.*, which was decided after *Smith*, should lead to a different result. I disagree. *Southern Union Co.* addressed the issue of fines. It did not mention restitution, and it did not undercut *Smith*'s rationale that *Apprendi* did not apply to restitution orders because the pertinent statutes did not establish maximum restitution amounts. Decisions from other jurisdictions decided after *Southern Union Co.* reach the same

conclusion that I just have. *United States v. Sawyer*, 825 F.3d 287, 297 (6th Cir. 2016); *United States v. Bengis*, 783 F.3d 407, 413 (2d Cir. 2015); *United States v. Green*, 722 F.3d 1146, 1150 (9th Cir. 2013); *United States v. Day*, 700 F.3d 713, 732 (4th Cir. 2012); *State v. Leon*, 381 P.3d 286, 289-90 (Ariz. Ct. App. 2016); *People v. Corbin*, 880 N.W.2d 2, 14 (Mich. Ct. App. 2015).